## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IVAN MCKINNEY,** | **Civil Action No.  20-6963 (FLW)** |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **SCO. PIAZZA, et al.,** | |
| **Defendants.** | |

     Plaintiff Ivan McKinney, a convicted prisoner confined at New Jersey State Prison in Trenton, New Jersey, seeks to bring this civil action *in forma pauperis*, without prepayment of fees or security, asserting claims pursuant to 42 U.S.C. § 1983.  The Court previously denied Plaintiff's IFP application and required him to submit additional information about his finances, which Plaintiff has submitted.  At this time, the Court grants Plaintiff's IFP application and screens his Complaint for dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

### I.    FACTUAL BACKGROUND

     Plaintiff Ivan McKinney, a frequent litigator in this District, has filed a Complaint against numerous prison officials at New Jersey State Prison, asserting civil rights claims pursuant to 42 U.S.C. § 1983 and violations of state law.

     Plaintiff's claims arise, in part, from his filing of a Prison Rape Elimination Act ("PREA")[1] complaint in May 2018, following a strip search.  On May 12, 2018, Plaintiff was waiting to be strip searched in "Ad Seg," and Officer Hillhaire told Plaintiff to squat and cough.  After Plaintiff

---

[1] Congress enacted PREA with the purpose of implementing standards and policies to prevent prison rape and to "protect the Eighth Amendment rights of Federal, State, and local prisoners." 34 U.S.C. § 30302 (formerly 42 U.S.C. § 15602).

1

complied, Hillhaire asked him to squat and cough again and would not tell Plaintiff why he needed Plaintiff to squat and cough a second time. *See* Complaint at 12-13. Plaintiff complied but "felt uncomfortable as per PREA guidelines" and asked for a sergeant. *See id.* at 13. Plaintiff told Sergeant Ramalino he felt uncomfortable, and Ramalino told Plaintiff to file a PREA complaint. *See id.* Plaintiff was stripped searched two more times before he could go to recreation, once by Officer Jensen and once by Officer Gilleo. *See id.* Plaintiff alleges that there was no indication of contraband. *See id.*

On May 13, 2018, Plaintiff filed a PREA complaint on the kiosk. *Id.* Several hours later, Sgt. Patoe told Plaintiff he would come back with two officers to take Plaintiff to medical, "per PREA guidelines." *Id.* Officers Poupart and Britton returned with Sgt. Patoe to take Plaintiff to medical. Plaintiff alleges that Sgt. Poupart made Plaintiff "stretch [his] arms backwards to the food port so he could cuff [him]" and Plaintiff alleges that Poupart and Bitton should have cuffed him in the front because he was a PREA victim.[2] *Id.*

Once Plaintiff arrived at the medical department, he saw Nurse Keisha Scott while on camera with Patoe, Bitton, and Poupart. *Id.*; see also Complaint at 6. Plaintiff told Nurse Scott about the strip search incident asked to "see the chaplain per PREA guidelines[.]" *Id.* Scott asked if Plaintiff was in pain, and he told her his shoulder "was aggravated from the manner of cuffing." Plaintiff alleges, however, that he did <u>not</u> tell Scott that Poupart assaulted him while cuffing him. *Id.*

---

[2] Plaintiff does not bring an Eighth Amendment claim for excessive force against Poupart and Bitton regarding the cuffing incident. Plaintiff also insists throughout the Complaint that he did not falsely accuse Poupart and Bitton of assault in connection with the May 13, 2018 incident. For that reason, the Court does not construe excessive force claims against Poupart and Bitton. Plaintiff also alludes to a prior incident with Poupart and "his partner" "the year before," but it is not clear if Plaintiff is attempting to bring an excessive force claim with respect to that incident, and it appears that any such claim would be untimely on the face of the Complaint.

Patoe told Scott that he, Britton, and Poupart would need to be relieved because Plaintiff was accusing them of assault.  *Id.* at 15.  Sgt. Gobel, Officer Small, and Officer Woods took over the escort, also on camera.  *Id.*  Plaintiff also alleges that Scott, Gobel, Nurse Manager Janet Veccirelli, Patient Advocate Diane Baca, and Nurse Supervisor Susan Spangler denied him the right to see someone from the "Chaplincy [sic] Dept."  *Id.*; see also Complaint at 6.

Thereafter, Plaintiff was not taken back to his Ad Seg cell.  Instead, Gobel, Small, and Woods took him to unit 4B, which is a close custody unit, and he was stripped searched upon arrival, for the second time that day.  *Id.*

On May 15, 2018, Officer Rodriguez wrote Plaintiff up on a "bogus charge" of lying and providing a false statement in connection with his shoulder injury.  *Id.* Plaintiff again alleges that he did not state he was assaulted by Poupart on May 13, 2018 and also did not lie when he filed a PREA charge because he honestly felt violated.  *Id.* at 17.  Plaintiff has attached the Disciplinary Report for the May 2018 incident, which indicates that he was charged with a *702 charge for making a PREA complaint about a routine search and for making a false accusation of assault.  *See* Attachments to Complaint at 51.  DHO Cortez allegedly acted in concert with E. Rodriguez, who is listed as the reporting employee on the charge, in bringing the false charge despite video of Plaintiff showing that he did not say he was assaulted by Poupart.  *Id.*  According to Plaintiff, Cortez allegedly knew she couldn't sustain a lying charge against Plaintiff for filing a PREA charge because he was honest when he said he felt violated by the strip searches.  *Id.*

On May 21, 2018, Cortez visited Plaintiff to tell him she was downgrading the charge to a verbal reprimand.  *Id.*  Plaintiff disagreed that he committed any infractions.  *Id.*  Cortez also allegedly forced Plaintiff to sign a form falsely stating he signed a PREA compliance form and saw a video on May 21, 2018.  *Id.* at 17.  In reality, Plaintiff was in the close custody cell and did

not watch the video. *Id.* Plaintiff alleges that "this is a continuation of DHO Cortez retaliating against Plaintiff . . . for filing grievances and litigation." *Id.* The Adjudication of Disciplinary Charge form indicates that Plaintiff received only a verbal warning and no other sanctions for the *305 charge. *See* Attachments to Complaint at 72.

Earlier, on April 23, 2018, DHO Cortez also allegedly sanctioned Plaintiff to 30 days Ad Seg and 90 days loss of phone privileges. Complaint at 17. Plaintiff accompanying exhibits show that he was sanctioned with the 90-day loss of phone privileges for using the phone system to make a three-way call. In a letter to Betty Norris dated May 14, 2018, Plaintiff states that he received the charge on April 23, 2018, for making a three-way call to the Court Clerk. *See* Attachments to Complaint at 41. Plaintiff's Complaint also mentions a three-way call with his family and the "Court Clerk[.]" *Id.* Plaintiff alleges that his loss of phone privileges should have been for 30 days maximum, and should not have included legal calls. *Id.* He alleges he lost two postconviction relief attorneys because he could not call them during the 90-day period. *Id.* Plaintiff also generally alleges the denial of counsel, the denial of effective counsel, a right to legal access, and attorney communication. *See* Complaint at 18. Plaintiff has attached to his Complaint a letter, dated June 11, 2018, from Administrator Amy Emrich, stating that Plaintiff had an attorney visit, an attorney phone call, and paralegal access during this timeframe. Complaint at 35. In a May 31, 2018 letter, the Assistant Ombudsman also indicates that Plaintiff had an attorney phone call on May 14, 2018. *See* Attachment to Complaint at 46. Plaintiff also alleges that an Officer Johnson and Officer Rosario threatened Plaintiff's attorney to quit during a visit, but he provides no other facts about this incident. *See* Complaint at 18.

Plaintiff further alleges he was placed in a close custody unit under special handling status in retaliation for filing a PREA complaint against Officer Hillhaire and for filing

4

grievances. *See id.* at 18.  In Count Five of the Complaint, Plaintiff generally alleges that supervisory Defendants Thompson, Royce, Falvey, Norris, Lanigan, Kendell, Cortez, and numerous John Does allegedly acted "in concert" to retaliate against him for filing a PREA complaint and placed him in close custody with special handling status.  Complaint at 23.

Plaintiff alleges he was strip searched 50-100 times over a 90-day period in close custody,[3] and the strip searches were on a video camera held by an unidentified sergeant or sergeants.  Plaintiff was also transported by two sergeants and two officers on video camera at all times.  *Id.*  Plaintiff alleges he was humiliated as a PREA victim and "filmed naked on camera before 4-8 officers daily."  *Id.*  Upon returning from a transport, Plaintiff allegedly "would have to get on the bed doggy style facing the wall while officers walked out of the cell, and they constantly looked at Plaintiff's rectum causing humiliation and emotional/mental harm."  *Id.* at 19.  On two occasions, there was a female officer present, Sergeant Adams.  *Id.*

Plaintiff also alleges he was subjected to "sensory deprivation" with "no TV, radio, access to phone, purposely hindered from sending email on kiosk, and officer's [sic] and sergeant's [sic] kept confiscating [his] legal envelopes so [he] could not write family or lawyers and courts."  *Id.*

Plaintiff also alleges that he was denied medication and left in pain without his 800mg Motrin.  *Id.*  Plaintiff alleges that Nurse Etian, Nurse Franswa, and NP Jackson denied him his pain meds "throughout the month of June 2018."  Later in the Complaint, however, Plaintiff alleges that NP Jackson denied him unspecified medical treatment, and lowered his dose of Motrin and gave him Tylenol instead.  *Id.* at 20.  Sgt. Piazza allegedly told NP Jackson to give

---

[3]  Plaintiff states that he received 30 days of Ad Seg for making the three-way call.  It is not clear when Plaintiff spent the 90 days in close custody with special handling status, but it appears to be at the same time he served the sanction for the loss of phone privileges.

Plaintiff Tylenol, and she listened. *Id.* Plaintiff also alleges that a doctor prescribed the Motrin and that NP Jackson and Piazza conspired together to retaliate against him for filing a PREA complaint. *See id.* at 20-21. On May 15, 2018, Sgt. Piazza and Officer Ursino allegedly took Plaintiff's pain medication from his cell without authorization, and Plaintiff was in pain for a week or more. *Id.* at 19.

The medical department also allegedly ignored Plaintiff's complaints of neck and shoulder pain for an "extended time." *Id.* Plaintiff alleges generally in Count Two of the Complaint that he filed grievances, attorney letters, and personal letters, and that Baccarelli, Baka, Spangler, and Administrator Royce had knowledge of his severe shoulder pain and other issues and did nothing. *Id.* at 22. Finally, Plaintiff was taken to "Ortho" on video camera. *Id.* at 20. Sgt. DeFazio and others allegedly interfered with his medical appointment, and Dr. Shakoor permitted the interference and participated in it. *Id.* Dr. Shakoor ordered an MRI, which revealed bone spurs and injuries to Plaintiff's neck, consistent with a past injury. *Id.*

Plaintiff was also denied yard recreation for approximately 45-60 days by Sgt. DeFazio, Sgt. Maraconda, Officer Ursino, and Officer Finn, who are allegedly corrections officers on Unit 4B. *Id.*; see also Complaint at 2-3. Plaintiff alleges he had shortness of breath, leg/knee pain, allergies, irritation, and cough due to the lack of recreation/movement. *Id.*

In addition, Chaplain J. Chebli refused to come see Plaintiff "per PREA protocol" and sent a chaplain two months later. *Id.* Plaintiff alleges that Sister Elizabeth came to see him on September 9, 2018, at 9:45 am, and Officer Ansino, "purposely stood by and listened to [his] conversation with Sister Elizabeth about [his] PREA issue." *Id.*

Plaintiff alleges that DHO Cortez, and John Falvey, who is Cortez's supervisor, "acted in concert to impede [Plaintiff] from filing litigation in this Court." *Id.* at 21. Plaintiff alleges that

Falvey acted to protect DHO Cortez, Tara Thompson, Major and John Doe.  Falvey also

allegedly denied Plaintiff's Open Public Records Act  request and prevented him from obtaining

information he needed to file the instant litigation.  *Id.*

## II.    STANDARD OF REVIEW

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66

to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review prisoner complaints when the

prisoner is proceeding *in forma pauperis.  See* 28 U.S.C. § 1915(e)(2)(B).  The PLRA directs

district courts to *sua sponte* dismiss claims that are frivolous or malicious, that fail to state a

claim upon which relief may be granted, or that seek monetary relief from a defendant who is

immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B).  Whether a complaint fails to state a

claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to

dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d

236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains

"sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "'At this early stage of the

litigation,' " the Court will accept the facts alleged in the pro se complaint as true, "'draw[ ] all

reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally

construed, ... contains facts sufficient to state a plausible [ ] claim.'"  *Shorter v. United States*, 12

F.4th 366, 374 (3d Cir. 2021) (first, third, and fourth alterations in original) (quoting *Perez v.

Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations, however, do not

suffice.  *Iqbal*, 556 U.S. at 678.

As Plaintiff is proceeding pro se, the Court construes his allegations liberally.  *Vogt v.

Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239,

244-45 (3d Cir. 2013)).  "This means [courts] remain flexible, especially 'when dealing with imprisoned pro se litigants....'" *Id.* (quoting *Mala*, 704 F.3d at 244).  The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 244.)  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).

## III.   <u>DISCUSSION</u>

The Court construes Plaintiff to bring civil rights claims pursuant to 42 U.S.C. § 1983. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005).  "It is well settled that § 1983 does not confer any substantive rights, but merely 'provides a method for vindicating federal rights elsewhere conferred.'" *Williams v. Pennsylvania Human Relations Comm'n*, 870 F.3d 294, 297 (3d Cir. 2017) (quoting *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 104 (3d Cir. 2014)).  To establish a claim under § 1983, Plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law.  *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

### a.   Eighth Amendment Claims

Plaintiff asserts a number of potential Eighth Amendment claims.  The Eighth Amendment guarantees the right to be free from "cruel and unusual punishments" while in custody. *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (quoting U.S. Const. amend. VIII).  A properly stated Eighth Amendment claim must allege a subjective and objective element. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  First, it must appear from the complaint that the

8

defendant official acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Second, the conduct must have been objectively "harmful enough," or "sufficiently serious" to violate the Constitution.  *Id.* at 298, 303.  The Court addresses each of Plaintiff's Eighth Amendment claims below.

### 1.  Inadequate Medical Care

In Count One, Plaintiff brings claims for denial of adequate medical care under the Eighth Amendment against Defendants Etian, Franswa, Shakoor, Jackson, Baca, and Spangler. The Constitution requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).  In order to state a claim for relief, Plaintiff must show a "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *See Natale v. Camden County Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citation omitted).

The test for "deliberate indifference" requires that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Natale*, 318 F.3d at 582.  To demonstrate the deliberate indifference prong of *Estelle*, a plaintiff must provide facts showing that each Defendant acted with deliberate indifference denying pain medication, substituting his medication, and/or failing to provide adequate for Plaintiff's shoulder injury. Mere medical malpractice or disagreement with the proper treatment of an illness cannot give rise to a violation of the Eighth Amendment.  *White v. Napoleon*, 897 F.2d 103, 108 (3d Cir. 1990); *see also Rouse*, 182 F.3d at 197.  The Court of Appeals has concluded that the deliberate

indifference standard is met "when prison officials 1) deny reasonable requests for medical treatment, and the denial exposes the inmate to undue suffering or the threat of tangible residual injury, 2) delay necessary medical treatment for non-medical reasons, or 3) prevent an inmate from receiving recommended treatment for serious medical needs, or deny access to a physician capable of evaluating the need for treatment." *Whooten v. Bussanich*, 248 F. App'x. 324, 326–27 (3d Cir. 2007) (citing *Monmouth v. Lanzaro*, 834, F.2d 326, 346–47 (3d Cir. 1987); *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993)).  The Third Circuit has also held that prison officials who continue a course of treatment they know is painful, ineffective, or entails a substantial risk of serious harm act with deliberate indifference. *See Rouse*, 182 F.3d at 197; *White*, 897 F.2d at 109.

Here, Plaintiff alleges that Nurse Etian, Nurse Franswa, and NP Jackson denied him "pain meds" "throughout the month of June 2018."  Plaintiff further alleges that NP Jackson denied him unspecified medical treatment, and lowered his dose of Motrin, which had been prescribed by a physician, and gave him Tylenol instead, allegedly at the direction of Defendant Piazza.  Plaintiff's allegations that Etian, Franswa and Jackson denied him "pain meds" in June 2018 is too vague to state a claim for relief.  From the outset, Plaintiff does not provide sufficient facts about the serious medical condition that required "pain meds," and it is unclear if Plaintiff was denied a specific type of pain medication or was denied pain medication all together.  In addition, Plaintiff appears to allege that Jackson reduced his dosage of Motrin and substituted Tylenol for Motrin, suggesting that his pain medication was reduced or changed rather than denied.  Moreover, Plaintiff does not provide sufficient facts about whether the substitution was ineffective.  Finally, Plaintiff also provides insufficient facts to suggest that Etian, Franswa, and/or Jackson acted with deliberate indifference to Plaintiff's serious medical need by denying

10

Plaintiff "pain meds" or that NP Jackson acted with deliberate indifference to Plaintiff's medical needs by lowering his dose of Motrin or by substituting Tylenol for Motrin. For these reasons, the Court dismisses without prejudice the deliberate indifference claims against Etian, Franswa, NP Jackson arising from the denial and/or substitution of pain medication for failure to state a claim for relief.

Plaintiff also alleges that Officers Piazza and Ursino took Plaintiff's pain medication without authorization from Plaintiff's cell, and Plaintiff was in pain for a week or more, but he fails to provide sufficient facts showing that Piazza and Ursino acted with deliberate indifference to any serious risk of harm faced by Plaintiff. As such, to the extent Plaintiff asserts a deliberate indifference claim against these officers, it is likewise dismissed without prejudice for failure to state a claim for relief.

Plaintiff also fails to state a claim for relief under the Eighth Amendment with respect to his claims about inadequate medical care for his neck and shoulder. Although Plaintiff states in a conclusory manner that the "medical department" ignored Plaintiff's complaints of neck and shoulder pain for an "extended time," the medical department is not a proper defendant in a § 1983 action, and Plaintiff does not identify any medical personnel who ignored his complaints of shoulder and neck pain or provide sufficient facts about the length of the purported delay in treatment. Moreover, Plaintiff alleges that he was taken to "Ortho" and Dr. Shakoor ordered an MRI, which revealed bone spurs, suggesting that he saw a specialist and received appropriate treatment. Plaintiff's conclusory allegations that Defendant DeFazio and others interfered with the medical appointment and Defendant Dr. Shakoor permitted the interference are too vague and conclusory to state a claim for relief. For these reasons, the inadequate medical care claims

11

in connection with Plaintiff's neck and shoulder are dismissed without prejudice as to all Defendants for failure to state a claim for relief.

In Count Two, Plaintiff also brings claims for supervisory liability against Baccarelli, Baka, Spangler, and Royce for alleged failures to "act, train, and discipline" in connection with the alleged denial of medical care and medicine. Plaintiff alleges very generally in Count Two of the Complaint that he filed grievances, attorney letters, and personal letters and that supervisors had knowledge of his severe shoulder pain and other issues and did nothing. *Id.* at 22.

It is well-settled that *respondeat superior* is not a basis for section 1983 liability for supervisors. As such, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved....") (internal quotations, citations omitted); *Innis v. Wilson*, 334 F. App'x 454, 457 (3d Cir. 2009) (indicating that section 1983 plaintiff could not maintain claim against individual defendant unless said defendant was personally involved in actions causing the claim). The failure to review or respond to letters or grievances is insufficient to show personal involvement. *Mincy v. Chmielsewski*, 508 F. App'x. 99, 104 (3d Cir. 2013) (An "officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."). Plaintiff's generalized allegation in Count Two that Baccarelli, Baka, Spangler, and Royce knew about his severe shoulder pain and did nothing is too conclusory to state a claim for relief, absent additional well-pleaded facts to suggest that each of these supervisory Defendants had actual notice of Plaintiff's severe shoulder pain and failed to ensure that he received

12

appropriate medical treatment.  For these reasons, the Court also dismisses without prejudice the supervisory liability claims against Baccarelli, Baka, Spangler, and Royce for failure to state a claim for relief.

Plaintiff is granted leave to amend his Eighth Amendment medical care claims.

### 2.  Conditions of Confinement Claims

In Count Three, Plaintiff alleges violations of Eighth Amendment against Thompson, Major John Doe, Royce, Finn, Ansino, Jennings, Piazza, Officer John Doe, Liaison Jessica Smith, Sgt. Maraconda, Sgt. DeFazio, Lt. Sangoli, Lt. Harris, Sgt. Johnson, for "sensory deprivation[.]" *See id.* at 22.  It is not entirely clear what Plaintiff means by sensory deprivations, but he alleges in the Complaint that he was denied television, radio, use of the Kiosk, and email.[4]  Plaintiff also alleges that Sgt. DeFazio, Sgt. Maraconda, Officer Ursino, and Officer Finn denied him yard recreation for approximately 45-60 days, which caused him physical symptoms.

"The Eighth Amendment's prohibition on 'cruel and unusual punishment' ... imposes on [prison officials] a duty to provide 'humane conditions of confinement.'" *Betts v. New Castle Youth Development*, 621 F.3d 249, 256 (3d Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  That is, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). For an alleged deprivation to rise to the level of an Eighth Amendment violation, it must "result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* at 835 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1982)). A condition of confinement violates the Eighth Amendment only if it

---

[4] The Court addresses Plaintiff's allegations that he was denied legal phone calls and access to attorneys separately.

is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of the minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Television, radio, and email privileges, however, do not constitute necessities. *See e.g., Robinson v. Wetzel*, 2015 WL 12910723, at *5 (M.D. Pa., 2015)(explaining that "it is well-settled that an inmate has no constitutional right to watch TV in his cell, and that such a deprivation does not amount to cruel and unusual punishment"); *see also James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992) ("a prisoner who is denied ... a television set has not set out a deprivation of [his rights under] ... the eighth amendment"); *Pepper v. Carroll*, 423 F.Supp.2d 442 (D. Del. 2006) (same); *Dickens v. Taylor*, 464 F.Supp.2d 341, 353–54 (D. Del. 2006) (same).  Plaintiff's Eighth Amendment claims regarding the denial of television, radio, and email is dismissed <u>with prejudice</u> for failure to state a claim for relief.

Plaintiff's Complaint also alleges that corrections officers denied him yard recreation. "There is no question that meaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'"  *Peterkin v. Jeffes*, 855 F.2d 1021, 1031 (3d Cir. 1988), quoting *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979).  To succeed on an Eighth Amendment claim based on prison conditions, however, a plaintiff must provide facts showing that "he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference."  *Farmer*, 511 U.S. at 834.  Plaintiff alleges in a cursory manner that first shift officers DeFazio, Ursino, Finn, and Maraconda denied him yard recreation for 45-60 days, causing him shortness of breath, allergies, leg pain, and cough.  Although Plaintiff sufficiently alleges that he was injured by the lack of recreation, he provides no facts showing that DeFazio, Ursino, Finn, and/or Maraconda acted with deliberate indifference in

denying him yard recreation.  The Court dismisses this claim without prejudice for failure to state a claim for relief and provides leave to amend with respect to the denial of recreation claim.

### 3.   Excessive or Exploitative Strip Searches

In Count Four, Plaintiff alleges that his Eighth Amendment rights have been violated by the "sexually exsploiting [sic] strip searches that was taped on video camera."  *Id.* at 23.  He brings this claim against Hillhaire, Gobel, Adams, Falvey, Kendell, DeFazio, Maraconda, Johnson, Thompson, Harris, Sangoli, Royce, Major John Doe, and Officer John Doe, "and all others who allowed this conduct."  *Id.*  The Court construes Plaintiff to challenge the strip searches by Hillhaire, Jensen, and Gilleo on May 12, 2018, as well as the strip searches he experienced during the 90-day period in close custody.  The Court liberally construes Plaintiff to bring the strip search claims under the Eighth and Fourth Amendments.

Where a prisoner alleges that the strip search was conducted in a physically abusive manner, the Eighth Amendment applies.  *See Jordan v. Cicchi*, 428 F. Appx. 195, 199-200 (3d Cir. 2011) (explaining that an excessive force claim arising from a strip search may proceed under either the Fourth Amendment or the Eighth Amendment, but the latter is "the primary source of protection after an individual's conviction"); *Robinson v. Ricci*, 2012 WL 1067909, at *17 n.6 (D.N.J. Mar. 29, 2012) (stating that, in addition to a possible Fourth Amendment violation, the "Eighth Amendment may be implicated where the strip search or visual body cavity search was conducted in a brutish and unreasonable manner").  Moreover, a strip search may violate the Eighth Amendment where it amounts to sexual abuse.  *See, e.g., Ricks v. Shover*, 891 F.3d 468, 478 (3d Cir. 2018)( explaining that "objectively serious sexual contact" between corrections officers and inmates, includ[ing] sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special

treatment or to avoid discipline" would violate the Eighth Amendment, but affirming dismissal of inmate's sexual abuse claim with leave to amend).

Here, Plaintiff does not provide any facts to suggest that any Defendants used excessive force or engaged in objectively serious sexual contact with him during the strip searches. As such, he fails to state any claims under the Eighth Amendment in connection with the strip searches, and the Eighth Amendment claims are dismissed without prejudice as to all Defendants.

The Court liberally construes Plaintiff to allege that the strip searches violated the Fourth Amendment. To raise a Fourth Amendment claim, the prisoner must allege that the strip search was unreasonable. *See Payton v. Vaughn*, 798 F. Supp. 258, 261-62 (E.D. Pa. 1992). Because prisons have a legitimate government interest in maintaining safety and keeping contraband out of prisons, suspicionless strip searches do not violate the Fourth Amendment where officials conduct searches in a reasonable manner to maintain security and to prevent the introduction of contraband or weapons in the facility. *See, e.g.*, *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 621 F.3d 296, 309-11 (3d Cir. 2010). Routine strip searches are also permissible as long as the searches are reasonable. *See Millhouse v. Arbasak*, 373 Fed. App'x. 135, 137 (3d Cir. 2010) (holding that routinely strip-searching inmates when entering and exiting their cells does not violate the Constitution where the search is reasonable). In *Parkell v. Danberg*, 833 F.3d 313, 329 (3d Cir. 2016), the Third Circuit explained that "[r]outine, suspicionless inmate search policies may sweep quite broadly and still be reasonable." The Third Circuit held, however, that that "thrice-daily bodily searches" of inmates in complete isolation in stripped down cells was not sufficiently related to legitimately penological purposes, as those inmates

16

would not have the opportunity to possess contraband.[5]  *Id.* at 328-329 (finding that the prison's "security interests are not reasonably advanced by a blanket policy of frequently and intrusively searching inmates who have previously been thoroughly searched and held in a stripped-down isolation cell without human contact ever since").

The Third Circuit has also explained that strip searches conducted in abusive fashion that go beyond a visual inspection may violate Fourth Amendment.  *See, e.g.*, *Watson v. Sec. of Pennsylvania Dep't of Corr.*, 436 F. App'x 131, 136 (3d Cir. 2011) (per curiam); *see also McMillan v. Hughes*, Civ. No. 17-13435 (RMB), 2018 WL 3945467, at *6 (D.N.J. Aug. 16, 2018) (finding a strip search stated claim under the Fourth Amendment where the prison officials conducted the search of plaintiff in front of inmates and other unauthorized persons, made degrading comments about his body, and threatened his safety during the search).

Plaintiff alleges that the strip search on May 12, 2018, was unreasonable because he was asked to squat and cough four times for three different officers and felt uncomfortable.  He also alleges that there was no indication he had contraband during the search.  Even if this is true, suspicionless searches are permitted under the Fourth Amendment as long as the search is reasonable.  Although the officers required Plaintiff to repeatedly squat and cough during the May 12, 2018 strip search, this appears to be a one-time occurrence, and Plaintiff does not plead facts to suggest that that this search occurred when he was in isolation with no opportunity for

---

[5] The searches in *Parkell* were visual body cavity searches, and the Court assumes that the searches described by Plaintiff were also visual body cavity searches because Plaintiff does not provide any facts to suggest the officers performed a manual cavity search.  The Third Circuit explained that "[a] 'visual body cavity search' extends to visual inspection of the anal and genital areas" and "[a] 'manual body cavity search' includes some degree of touching or probing of body cavities." *Parkell*, 833 F.3d at 327 (citing *Blackburn v. Snow*, 771 F.2d 556, 561 n.3 (1st Cir. 1985)).

human contact.  Indeed, Plaintiff states that he had to undergo the search prior to going to recreation, where he presumably would be in contact with other inmates.  Plaintiff also does not provide facts to suggest that Hillaire, Jensen, or Gilleo threatened him or made degrading comments during the strip searches, or that the searches involved any sexualized touching or abuse.  Plaintiff's suggestion that his strip search violated PREA guidelines because it made him uncomfortable does not, in itself, state a cause of action.  *See Bowens v. Wetzel*, 674 F. App'x 133, 137 (3d Cir. 2017) (per curiam) ("Plaintiff may not attempt to enforce statutes or policies that do not themselves create a private right of action [including PREA] by bootstrapping such standards into a constitutional deliberate indifference claim.").  For these reasons, Plaintiff fails to state a Fourth Amendment violation based on May 12, 2018 strip search, and this claim is dismissed without prejudice for failure to state a claim for relief.

Plaintiff's also alleges that he was strip-searched 50-100 times during the 90-day period he spent in close custody with special handling.  Assuming the truth of this allegation, this number of strip searches does not appear excessive, as Plaintiff does not allege he was in isolation with no opportunity to for human contact during his time in close custody.  His Complaint also mentions returning from "transports" outside the prison.  Plaintiff alleges the strip searches in close custody are degrading because he was required to "crouch doggy-style" for the strip searches when he returned from a transport, that a female officer was present on several occasions, and that the strip searches were recorded on camera by an unidentified sergeant, and that 4-8 officers saw him naked, and that unidentified officers were constantly looking at his rectum.  Plaintiff does not allege that the presence of the female officer violated any prison regulations or that the recording of the strip searches lacked penological justification.  Nor does Plaintiff allege that the recordings were viewed by unauthorized persons or used for

any illegitimate purpose.  Even if Plaintiff otherwise stated a claim for relief, he fails to provide sufficient facts about which prison officials conducted or authorized the offending strip searches and the recordings of the strip searches.  Plaintiff also does not identify which corrections officers were "constantly staring at his rectum" or explain what he means by that statement.

For these reasons, the Court dismisses Plaintiff's Fourth Amendment strip search claims without prejudice for failure to state a claim for relief as to all Defendants and provides Plaintiff with leave to amend his Fourth or Eighth Amendment strip search claims.

**b.  First Amendment Retaliation Claims**

Plaintiff also attempts to bring § 1983 claims for First Amendment retaliation. "Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012); *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990) ("Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983.").  To state a claim for retaliation, a plaintiff must allege that: "(1) he engaged in constitutionally protected conduct[;] (2) he then suffered some adverse action caused by prison officials; and (3) a causal link existed between the protected conduct and the adverse action."  *Obiegbu v. Werlinger*, 581 F. App'x 119, 122 (3d Cir, 2014) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) ). The filing of grievances is protected conduct under the First Amendment. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (stating that filing of prison grievances constitutes protected conduct failing within ambit of First Amendment).

In Count Five, Plaintiff brings First Amendment retaliation claims against supervisory Defendants Thompson, Royce, Falvey, Norris, Lanigan, Kendell, Cortez, and numerous John Does for allegedly acting "in concert" to retaliate against him for filing a PREA complaint and

19

placing him in close custody with special handling status.  Complaint at 23.  In Count Six, Plaintiff also brings First Amendment retaliation claims against Harris, Johnson, DeFazio, Maraconda, Thompson, Finn, Ursino, Piazza, Jennings, Hillhaire, Rosario, Sangoli, Gobel, Falvey, Vaccirelli, Baka, Spangler, and John Does.  *Id*. at 24.  He alleges that these Defendants retaliated against him for filing grievances, such as a PREA complaint.  *Id.*

In his Complaint, Plaintiff alleges that he "was placed" in a close custody cell with special handling status due to and shortly after his filing of the PREA Complaint.  The Court assumes without deciding that the filing of a PREA complaint is a protected activity similar to filing a grievance and that a transfer to close custody under restrictive conditions could amount to an adverse action.  Here, however, Plaintiff's allegations that Thompson, Royce, Falvey, Norris, Lanigan, Kendell, Cortez, and several John Does acted "in concert" to place him in close custody because he filed a PREA complaint are utterly conclusory, and he fails to provide sufficient facts showing which, if any, of these Defendants had contemporaneous knowledge that Plaintiff filed a PREA complaint and made the decision to move him to a close custody unit in order to retaliate against him for filing the PREA complaint.[6]  Although the Complaint includes facts showing that DHO Cortez knew Plaintiff filed the PREA complaint and charged Plaintiff with disciplinary infractions in connection with the incident, he fails to provide any well-pleaded facts showing that Cortez made housing decisions and/or was responsible for moving him to the

---

[6] Plaintiff's allegations of conspiracy or concerted action are also conclusory.  *See Watson v. Sec'y Pa. Dep't of Corr.*, 436 F. App'x 131, 137 (3d Cir. 2011) (finding plaintiff's "allegations of conspiracy to be conclusory and wanting—he invokes 'conspiracy,' but fails to plead an actual agreement between the parties"; thus, as "the linchpin for conspiracy is agreement, concerted action, without more, cannot suffice to state a conspiracy claim") (internal quotations and citation omitted).  The Court does not construe Plaintiff to allege a separate conspiracy claim, but any such claim would be subject to dismissal for failure to state a claim for relief.

close custody unit.  Plaintiff's general allegations that Cortez filed the April 2018 disciplinary charges against him in retaliation for his filing of grievances and litigation is also too conclusory to state a claim for relief, as there are no well-pleaded facts to support this bare allegation.  The First Amendment retaliation claims alleged in Count Five are therefore dismissed without prejudice for failure to state a claim for relief as to Thompson, Royce, Falvey, Norris, Lanigan, Kendell, Cortez, and the John Does. Plaintiff is provided leave to amend to the extent he can provide facts showing that a particular Defendant or Defendants ordered that Plaintiff be placed in close custody in retaliation for his filing of the PREA complaint and/or that DHO Cortez filed charges against Plaintiff in retaliation for his filing of the PREA Complaint or grievances/litigation.

Plaintiff's claims in Count Six that Harris, Johnson, DeFazio, Maraconda, Thompson, Finn, Ursino, Piazza, Jennings, Hillhaire, Rosario, Sangoli, Gobel, Falvey, Vaccirelli, Baka, Spangler, and John Does also retaliated against him for filing grievances and/or the PREA Complaint are equally conclusory, and Plaintiff fails to provide sufficient facts showing that any of the alleged misconduct by these individuals was motivated by a desire to punish Plaintiff for his filing of grievances or the PREA complaint.  The Court therefore dismisses the remaining First Amendment retaliation claims without prejudice for failure to state a claim for relief, and provides Plaintiff with leave to amend.

### c.  Due Process Claims

In Count Seven, Plaintiff alleges he was denied due process in connection with his disciplinary proceedings and appeals.  He brings this claim against Cortez, Royce, Falvey, and John Doe Investigator.  *See id.*  It is well-settled that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings

does not apply ." *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974).  Prisoners are entitled to due-process protection only when the disciplinary action results in the loss of good-conduct time or when a penalty "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995).  Here, Plaintiff fails to set forth a cognizable due process claim as the disciplinary sanctions he received do not implicate any liberty interests that are protected by the Due Process Clause.  *See Leamer v. Fauver,* 288 F.3d 532, 542 (3d Cir.2002) (affirming dismissal of habeas petition where disciplinary sanctions did not result in the loss of good conduct time).  Plaintiff does not allege that he lost good time credits that affect his sentence.  The exhibits Plaintiff attaches to his Complaint show that he received only a verbal warning in connection with the disciplinary infraction in May 2018, and was sanctioned to 30 days in Ad Seg and a 90-day loss of phone privileges in connection with his April 2018 infractions.  These sanctions do not implicate protected liberty interests.  The Court dismisses Plaintiff's due process claims <u>with prejudice</u> for failure to state a claim for relief.

**d.  Equal Protection Claims**

In Count Eight, Plaintiff alleges he was denied equal protection.  He brings this claim against Royce, Cortez, Thompson, Falvey, Norris, Smith, Lanigan, Kendell, Harris, Sangoli, DeFazio, Finn, Piazza, Ansino, Jennings, and various John Does.  *Id.* at 25. "[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923)).  To bring a successful claim under section 1983 for a denial of equal protection

under the Fourteenth Amendment where, as here, Plaintiff does not allege membership in a suspect class or interference with a fundamental right, Plaintiff must show that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *See, e.g., Olech*, 528 U.S. at 564. To sufficiently allege a "class of one" equal protection claim, Plaintiff must state facts showing that: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008). Plaintiff does not provide any facts suggesting that any of the Defendants intentionally treated him differently than other similarly situated prisoners. As such, the equal protection claim is dismissed without prejudice for failure to state a claim for relief as to all Defendants.

### e. Access to Attorney and Access to the Court Claims

In Count Nine, Plaintiff alleges that the Defendants Finn, Ansino, Jennings, Piazza, Royce, Thompson, Smith, DeFazio, Johnson, Harris, Sangoli, Falvey, Norris, Kendell, Lanigan, Maraconda, Cortez, and various John Does violated his Sixth Amendment right to legal access by denying him legal phone calls and by causing two attorneys to "jump off his case." *Id.* at 25. In Count Ten, Plaintiff alleges violations of his First Amendment right to "lawyer client privilege" against Cortez, Finn, Ansino, Jennings, Piazza, Royce, Norris, Lanigan, DeFazio, Johnson, Sangoli, Harris, Smith, Thompson, Maraconda, Kendall, and various John and Jane Does. *Id.* at 25-26. In Count Eleven, Plaintiff alleges violations of his First Amendment right to communications with his attorney against Ansino, Johnson, Harris, Rosario for allegedly taking his legal envelopes. *See id.* at 26. In Count Twelve, Plaintiff alleges violations of Sixth Amendment right to counsel for denying him telephone privileges for 90 days, including legal

calls, and for confiscating his legal envelopes.  Plaintiff alleges this claim against Thompson, Norris, Lanigan, Kendell, Smith, Sangoli, Harris, Johnson, DeFazio, Maraconda, Piazza, Jennings, Finn, Ansino, Royce, and various John and Jane Does.  *Id.* at 26.

The Court begins with the Sixth Amendment claims.  The Sixth Amendment provides that "[in] all criminal prosecutions, the accused shall ... have the Assistance of Counsel for his defence." U.S. Const. amend. VI.  This right attaches when a prosecution is commenced, *i.e.*, "at or after the initiation of adversary judicial criminal proceedings." *Texas v. Cobb*, 532 U.S. 162, 167-68 (2001).  Nevertheless, "it is well established that the Sixth Amendment right to counsel does not extend to post-conviction proceedings." *Romansky v. Superintendent Greene SCI*, 933 F.3d 293, 301 (3d Cir. 2019) (citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987)).  Rather it extends only to trial and "to the first appeal of right." *Id.* (citing *Finley*, 481 U.S. at 555).  Here, Plaintiff, a convicted prisoner, fails to allege that he was subject to any new criminal charges or that he was appealing his conviction(s) during the relevant time.  Instead, Plaintiff alleges that he lost two postconviction relief attorneys due to the loss of telephone privileges.  These allegations fail to state a claim for relief because he is not entitled to an attorney for postconviction proceedings under the Sixth Amendment.  The Sixth Amendment claims are dismissed with prejudice for failure to state a claim for relief as to all Defendants.

Plaintiff also alleges interference with his right of access to the courts.  The constitutional right of access to the courts arises from the Petition Clause of the First Amendment, as well as the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  *See Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987); *McDonald v. Smith*, 472 U.S. 479, 482–85 (1985); *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), overruled on other grounds, *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989).

For prisoners, meaningful access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817 (1977), overruled on other grounds by *Lewis v. Casey*, 518 U.S. 343, 354 (1996). The right of access to the courts is not, however, "an abstract, freestanding right to a law library or legal assistance." *Lewis*, 518 U.S. at 351; *see also Pallipurath v. N.J. Dep't of Corr.*, No. A-1671-15T1, 2017 WL 3297456, at *1 (N.J. Super. Ct. App. Div. Aug. 3, 2017), *certif. denied* 232 N.J. 54 (2018). Instead, plaintiffs must show actual resulting injuries: "that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). To state such a claim, a plaintiff must describe the underlying, predicate claim "well enough to show that it is 'more than mere hope'" and must identify the lost remedy. *Id.* at 205–06 (quoting *Christopher v. Harbury*, 536 U.S. 403, 416–17 (2002)). A plaintiff must further show that there is no possible remedy for the claimed harm other than through an access-to-the-courts claim. *Christopher*, 536 U.S. at 415 (2002); *Monroe*, 536 F.3d at 205–06. Prisoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement. *Lewis*, 518 U.S. at 354–55.

Here, Plaintiff alleges that two potential postconviction relief attorneys "jumped off his case" due to the denial of legal phone calls.[7] Plaintiff does not, however, describe his underlying postconviction relief claims at all and does not allege that any of the postconviction relief claims are potentially meritorious. Plaintiff also fails to allege that he was unsuccessful in his postconviction relief proceedings because he was unable to obtain counsel during the 90-day

---

[7] The exhibits Plaintiff provides indicate that he had at least one visit and call with an attorney during this period.

period.  As such, he fails to state an access to the courts claim with respect to the loss of two postconviction relief attorneys.  The access to the courts claims are dismissed without prejudice for failure to state a claim for relief as to all Defendants.

Separately, Plaintiff also alleges that DHO Cortez and John Falvey acted in concert to delay Plaintiff's filing of this litigation and that Falvey denied his OPRA requests.  Plaintiff has not provided sufficient facts about the information Falvey prevented Plaintiff from obtaining or how that lack of information delayed the instant lawsuit.  Nor does he provide facts suggesting that he is still unable to proceed on the instant law suit or that he has lost any remedy with respect to the instant suit.   As such, the Court also dismisses without prejudice the access to the courts claims for failure to state a claim for relief against DHO Cortez, and Falvey.

Plaintiff is granted leave to amend his access to the courts claims.

### f.  Denial of a Chaplain

In Count Thirteen, Plaintiff alleges that Scott, Finn, Ansino, Chebli, Royce, Vaccirelli, Baka, Spangler, Thompson, and various John and Jane Does, denied him the right to a Chaplain pursuant to PREA and pursuant to his freedom of religion.  *Id.* at 27.  Plaintiff has not identified his religion or his religious beliefs.  Moreover, Plaintiff provides no facts to suggest that he required a Chaplain for religious reasons.  Instead, he alleges that Defendants failed to comply with purported PREA guidelines, but the failure to comply with PREA guidelines, without more, does not violate the Constitution.  *See, e.g., Bowens*, 674 F. App'x at 137.  The claim regarding the denial of the right to a Chaplain is dismissed with prejudice as to all Defendants.

### g.  Failure to Act on Grievances and Letters

In Count Fourteen, Plaintiff alleges that Sangoli, DeFazio, Johnson, Harris, Thompson, Maraconda, Royce, Smith, Veccarelli, Spangler, Baka, Lanigan, Norris, Kendell, Jackson, and

various John and Jane Does failed to act when notified by Plaintiff's grievances and letters, and attorney letters.  *Id.* at 28.  Although, as discussed above, the filing of a grievance is a constitutionally protected activity, *see Mitchell v. Horn*, 318 F.3d at 530 (noting that the filing of a grievance is protected by the First Amendment), access to an adequate grievance procedure is not a constitutional right.  *See, e.g., Heleva v. Kramer*, 214 F. App'x. 244, 247 (3d Cir. 2007) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("Prisoners do not have a constitutional right to prison grievance procedures.").  "[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process [citation omitted], a prisoner cannot maintain a constitutional claim ... based upon [the prisoner's] perception that [the recipient of the grievances] ignored and/or failed to properly investigate his grievances." *Woods v. First Corr. Med. Inc.*, 446 F. App'x. 400, 403 (3d Cir. 2011).  And, as explained above, the failure to review or respond to letters or grievances is insufficient to show personal involvement in constitutional violations.  *Mincy v. Chmielsewski*, 508 F. App'x. at 104  (An "officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement.").  For these reasons, the Court dismisses with prejudice Plaintiff's § 1983 claim premised on the failure to respond to or act on grievances and letters.

**h.  Failure to Train**

In Count Fifteen, Plaintiff alleges Royce sets policies at NJSP and failed to provide adequate training and willfully allowed the Defendants to abuse Plaintiff.  *Id.* at 28-29. "Under Section 1983, a supervisor may be liable for her failure to train or supervise [his] employees...." *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008). To state a claim under § 1983 for failure to train, a complaint must allege that the supervisor's failure to train employees amounts to " 'deliberate indifference to the rights of persons with whom the

[untrained employees] c[a]me into contact.' " *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (first alteration in original) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) ). To prevail, the plaintiff must "identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).  Here, Plaintiff fails to provide facts regarding the specific training that Royce failed to provide and the way in which the absence of that specific training led to the purported violations of his constitutional rights. The failure to train claim is dismissed without prejudice for failure to state a claim for relief as to Royce, and Plaintiff is provided leave to amend.

### i.  New Jersey Civil Rights Act and Medical Negligence Claims

In Count Seventeen,[8] Plaintiff alleges that Scott, Veccarelli, Spangler, Baca, Shakoor, and Jackson were negligent in denying medical attention, medicine, failing to dispense meds as ordered, lowering doses of meds to please custody, and acting in concert with custody to retaliate and deny care, and their actions violated Plaintiff's civil rights, including the Eighth Amendment and the NJCRA.  *Id.* at 29.  The Court construes Plaintiff to raise medical negligence and NJCRA claims in addition to his Eighth Amendment claims.

Where the district court has dismissed all claims over which it had original jurisdiction, the court may decline to exercise supplemental jurisdiction over state law claims.  28 U.S.C. § 1367(c)(3).  Whether the court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir.2009).  The primary justification for exercising supplemental jurisdiction, however, is absent if the substantive federal claim is no longer viable.

---

[8] There is no Count Sixteen.

*Thornton v. City of Pittsburgh*, 777 F. Supp.2d 946, 955 (W.D. Pa., 2011).

Here, the Court has already addressed why Plaintiff fails to state an Eighth Amendment claim for inadequate medical care against these Defendants.  Because the Court has dismissed all the federal claims in Plaintiff's Complaint, it declines supplemental jurisdiction over any potential state law medical negligence and/or NJCRA claims, as alleged in Count Seventeen, at this time.[9]

## IV.    <u>CONCLUSION</u>

For the reasons explained herein, the Court dismisses the federal claims brought pursuant to § 1983 for failure to state a claim for relief.  The Court declines supplemental jurisdiction over any remaining state law claims in light of the dismissal of the federal claims and will mark this matter as closed.  Within 45 days, Plaintiff may file an Amended Complaint and a request to reopen this matter with respect to the claims the Court has dismissed without prejudice, as outlined in this Memorandum Opinion.  An appropriate Order follows.

<u>s/Freda L. Wolfson</u>
Freda L. Wolfson
U.S. Chief District Judge

---

[9] If Plaintiff elects to amend his Complaint, he may reassert his state law claims.